# Exhibit A

## General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☐ State Court of ______________ County

**For Clerk Use Only**

Date Filed ______________ MM-DD-YYYY

Case Number 18 A 06045-1

**Plaintiff(s)**

SANFORD STEPHEN T.
Last First Middle I. Suffix Prefix

Alternative Energy Management LLC of GA
Last First Middle I. Suffix Prefix

Last First Middle I. Suffix Prefix

Last First Middle I. Suffix Prefix

**Defendant(s)**

Pugh Benjamin Frank
Last First Middle I. Suffix Prefix

Alternative Energy Management LLC of MA
Last First Middle I. Suffix Prefix

Last First Middle I. Suffix Prefix

Last First Middle I. Suffix Prefix

Plaintiff's Attorney SCOTT BUSHNELL Bar Number 098980 Self-Represented ☐

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA
2018 JUL 12 PM 3:28
RICHARD ALEXANDER, CLERK

**Check One Case Type in One Box**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☑ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

______________ Case Number ______________ Case Number

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. ______________ Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2018 JUL 12 PM 3:28

RICHARD ALEXANDER, CLERK

**IN THE SUPERIOR COURT OF GWINNETT COUNTY**

**STATE OF GEORGIA**

STEPHEN SANFORD and )
ALTERNATIVE ENERGY MANAGEMENT, LLC, )
of Georgia d/b/a AEM, LLC. ) CAFN: 18 A 06045-1
)
Plaintiffs )
v. )
)
BENJAMIN FRANK PUGH and )
ALTERNATIVE ENERGY MANAGEMENT, LLC, )
of Massachusetts, d/b/a AEM, LLC. )
)
Defendants. )

**COMPLAINT**

---

COMES NOW the Plaintiffs, Stephen Sanford and Alternative Energy Management, L.L.C. of Georgia, and for their Complaint against the Defendants, Benjamin Frank Pugh and Alternative Energy Management, LLC of Massachusetts, states the following:

## I. THE PARTIES

1. Plaintiff Alternative Energy Management, L.L.C., ("Plaintiff"), is a corporation organized and existing under the laws of the State of Georgia, having a principal place of business located at 3415 Brightmoore Ct., Dacula, GA 30019.

2. Upon information and belief, Defendant Alternative Energy Management, L.L.C. ("Defendant") is a corporation organized and existing under the laws of the State of

Massachusetts, having a principal place of business located at 89 Spofford Road, Boxford, MA 01921.

3. Defendant B. Frank Pugh is an individual who was formerly a partner in Alternative Energy Management, L.L.C. (Georgia) and who may be served with summons and process at his residence: 89 Spofford Road, Boxford MA 01921

## II.   JURISDICTION AND VENUE

4. This is an action against Defendants for breach of contract, tortious interference with contract, breach of fiduciary duty, fraud, trademark infringement, false designation of origin and unfair competition arising under Georgia statutory law at O.C.G.A §23-2-55, under Georgia Uniform Deceptive Trade Practices Act at O.C.G.A. §10-1-372, and under the common law of Georgia.

5. This court has jurisdiction over the subject matter of this complaint.

6. This Court has personal jurisdiction over Defendant Pugh because he was formerly partner in Alternative Energy Management, L.L.C.(Georgia) and he has done business in the State of Georgia. This Court has personal jurisdiction over Alternative Energy Management, L.L.C.(Massachusetts) because the company has done business in the State of Georgia and has infringed on Plaintiff Alternative Energy Management, L.L.C.(Georgia) trademark, stolen business opportunities and done business in the State of Georgia.

7. Venue is proper in this court because Defendant Pugh was formerly a member of Alternative Energy Management, L.L.C.(Georgia) whose principal place of business is in Gwinnett County.

## III.   THE CONTROVERSY

8. Since 2008, Plaintiff Alternative Energy Management, L.L.C.(Georgia) has been and continues to be engaged in the business of providing alternative energy related products and services, energy consulting services, energy efficient lighting, energy management systems, alternative energy sources and indoor air quality systems in and around the Atlanta, Georgia metropolitan area, the State of Georgia, and in other states and around the United States.

9. Plaintiff Alternative Energy Management, L.L.C.(Georgia) is the owner of the trademark AEM, in both word and design form.  Plaintiff's Alternative Energy Management design mark has a distinct appearance comprised of the words Alternative Energy Management in green font with a full sunburst in the left side. (See Ex. A, Plaintiff's design trademark).  Plaintiff Alternative Energy Management, L.L.C.(Georgia) markets alternative energy related products and services, energy consulting services, energy efficient lighting, energy management systems, alternative energy sources and indoor air quality systems word and design trademark All of Plaintiff's word and design trademarks, including those that are federally registered, are collectively referred to herein as "AEM trademarks."

10. Plaintiff Alternative Energy Management, L.L.C. was formed by Plaintiff Sanford on or about July 15, 2008 pursuant to the laws of the State of Georgia. (hereinafter AEM-GA)

11. On or about January 1, 2010 Plaintiff Sanford, Defendant Pugh and Donald Lowe entered into a "Limited Liability Operating Agreement for Alternative Energy Management, LLC" (Hereinafter "Agreement") a true and correct copy of which is attached hereto as Exhibit B.

12. On or about January 1, 2010 Plaintiff Sanford, Defendant Pugh and Donald Lowe entered into an "Addendum to Alternative Energy Management Operating Agreement" a true and correct copy of which is attached as Exhibit C.

13. Plaintiff Sanford and Defendant Pugh operated the business pursuant to the terms of the Agreement for approximately seven (7) years.

14. On or about April 21, 2017 Defendant Pugh, without authority to do so, altered AEM-GA's business information to change the registered agent to: Benjamin F. Pugh 1132 Brandenberry Lane, Auburn, GA 30011. (Exhibit D)

15. On or about April 22, 2017 Defendant Pugh without authority to do so formed the business entity Alternative Energy Management, LLC in the State of Massachusetts.( Hereinafter AEM-MASS ) A true and correct copy of the Certificate

of Organization from the State of Massachusetts for AEM-MASS is attached hereto as Exhibit E.

16. On or about April 25, 2017 Defendant Pugh, without the authority to do so, terminated AEM-GA with the Georgia Secretary of State. (Exhibit F)

17. Since on or about April 25, 2017 Defendant Pugh has been acting in a manner calculated to convert business opportunities of AEM-GA to his own purposes and that of AEM-MASS.

18. Since on or about April 25, 2017 Defendant Pugh has been contacting clients and vendors of AEM-GA and telling them that the company has been terminated.

19. Since on or about April 25, 2017 Defendant Pugh has been appropriating business opportunities of AEM-GA to his own use or that of AEM-MASS.

20. Since on or about April 25, 2017 Defendant Pugh has attempted to order product using AEM-GA's credit and have said product delivered to AEM-MASS or its customers.

21. Since on or about April 25, 2017 Defendant Pugh has attempted to use AEM-GA tax identification number in transactions for AEM-MASS.

22. Since on or about April 25, 2017 Defendant Pugh has attempted to convert AEM-GA's Dun and Bradstreet rating to AEM-MASS.

23. Since on or about April 25, 2017 Defendant Pugh has been acting in a manner such that he breached his fiduciary duties to AEM-GA and to Plaintiff Sanford.

24. Plaintiff has been continuously using its AEM-GA trademarks in a prominent and distinctive manner in interstate commerce so as to distinguish the source of its products and services from those of others and has spent significant effort and sums of money in advertising and otherwise promoting the sale of its goods and services under its AEM trademarks.

25. Plaintiff's rights in the AEM trademarks are based upon the continuous use of the trademarks in its business.

26. Defendant began using AEM-MASS marks which are the exact same as AEM Trademarks to label, advertise and sell Defendant's products and services for use in competition with Plaintiff without the approval or consent of Plaintiff. (collectively "AEM-MASS marks"). (See Exhibit G, Defendant's AEM-MASS mark).

27. Plaintiff and Defendant are competitors in alternative energy related products and services, energy consulting services, energy efficient lighting, energy management systems, alternative energy sources and indoor air quality systems word and design industry throughout the United States and in Georgia.

28. Defendant is distributing its products and/or services under the AEM-MASS marks throughout the United States, including but not limited to the State of Georgia.

29. Defendant's AEM-MASS marks are confusingly similar to Plaintiff's well-known AEM trademarks in appearance and meaning, and are being used in connection with identical and closely related products and services that travel and are promoted through the same channels of trade for sale to, and use by, the same class of purchasers for Plaintiff's products and/or services advertised and sold under Plaintiff's AEM trademarks.

30. Defendant's use of its AEM-MASS marks is likely to cause confusion or mistake or to deceive as to the origin, affiliation, connection, or association of Defendant with Plaintiff, or as to the sponsorship or approval of Defendant's goods, services or commercial activity by Plaintiff.

31. In direct disregard of Plaintiff's rights in and to its AEM trademarks, Defendant has refused to cease using the AEM-MASS marks and has continued to use the same to trade on Plaintiff's reputation and the goodwill embodied by Plaintiff's AEM trademarks.

32. When Defendant terminated AEM-GA without authority he in his filing to dissolve the company fraudulently informed the State of Georgia that AEM-GA had no outstanding debts when it did in fact have such debts.

## COUNT I

### BREACH OF FIDUCIARY DUTY

33. Plaintiff hereby incorporates and realleges paragraphs one (1) through thirty-two (32) as if fully set forth herein.

34. As a managing member in AEM-GA, Defendant Pugh owed fiduciary duties to his partner Stephen Sanford and to AEM-GA to act in good faith and in the best interests of the company.

35. Defendant Pugh has breached his fiduciary duties in one or more of the following particulars: a) by terminating AEM-GA without authority; b) by creating AEM-MASS to directly compete for business with AEM-GA; c) by converting business opportunities of AEM-GA to the use of AEM-MASS; d) by trying to use the credit of AEM-GA to purchase product for the use of AEM-MASS; e) by trying to convert the Dunn & Bradstreet rating of AEM-GA to AEM-MASS; f) by notifying AEM-GA clients and vendors that it had been terminated as a business entity.

36. Defendant Pugh's actions have been taken with a wanton indifference to the damage he has caused Plaintiffs.

37. Defendant Pugh's breach of his fiduciary duties has caused economic damages to Plaintiffs in an amount to be proven at trial.

38. Plaintiffs are entitled to a judgment against Defendant Pugh for breach of fiduciary duties in an amount to be proven at trial.

**COUNT II**

**UNFAIR COMPETITION**

39. Plaintiff hereby incorporates and realleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

40. The unauthorized use in commerce by Defendant of a designation that is confusingly similar to Plaintiff's AEM-GA's trademarks falsely designates the origin or association of such goods and services as being with Plaintiff. Such use is intended to and inevitably will cause confusion or mistake or deceive the consuming public into believing that there exists an affiliation, connection or association between Defendant and Plaintiff as to the origin, sponsorship, or approval of Defendant's goods and/or services. Such constitutes false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. §1125.

41. Upon information and belief, Defendant's wrongful activities have caused, and unless enjoined by this Court, will continued to cause irreparable injury and other damage to Plaintiff's business, reputation and goodwill in its AEM-GA marks. Plaintiff has no adequate remedy at law.

42. Defendant's infringing conduct has been deliberate and willful.

43. Plaintiffs are entitled to all available remedies provided by 15 U.S.C. §§ 1114, 1117 and 1118, including preliminary and permanent injunctive relief and damages, Defendants' profits, treble damages, costs and reasonable attorneys' fees.

**COUNT III**

**GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT**

44. Plaintiff hereby incorporates and realleges paragraphs one (1) through forty-three (43) as if fully set forth herein.

45. This count arises under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §10-1-370.

46. Defendant's adoption and use in Georgia of a designation which is confusingly similar to Plaintiff's trademark is likely to cause confusion or mistake and has or will deceive the public into falsely associating Defendant's products and/or services with Plaintiff and into falsely believing that Defendant's products and/or services originate with or are sponsored by or approved by Plaintiff.

47. By adopting the AEM-MASS marks, which are confusingly similar to Plaintiff's AEM-GA trademarks, Defendant is falsely passing off its goods and services as those of Plaintiff and unfairly trading on the goodwill and reputation of Plaintiff.

48. The use by Defendant of the words "ALTERNATIVE ENERGY MANAGEMENT" and "AEM" constitutes unlawful appropriation of Plaintiff's exclusive rights in and to Plaintiff's AEM-GA trademarks. Such unauthorized use has caused and is causing damage and irreparable injury to Plaintiff.

49. Defendant's acts constitute unfair and deceptive trade practice in violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.GA. §10-1-372. Such unfair and deceptive trade practice will continue unless enjoined by this Court.

50. Plaintiff has no adequate remedy at law.

## COUNT IV

## GEORGIA FRAUDULENT USE OF TRADEMARKS

51. Plaintiff hereby incorporates and realleges paragraphs one (1) through fifty (50) as if fully set forth herein.

52. Defendant is attempting to encroach upon the business of Plaintiff by using the AEM-MASS marks which are confusingly similar to Plaintiff's AEM-GA trademarks, on the same or similar goods and/or services, with the intent of deceiving and misleading the public into wrongly believing there exists some connection between Plaintiff and Defendant or that either party is the source of the other's products and/or services.

53. Defendant's acts constitute fraud in violation of O.C.G.A. §23-2-55. Such fraud will continue unless enjoined by this Court.

54. Plaintiff has no adequate remedy at law.

**COUNT V**

**GEORGIA COMMON LAW TRADEMARK INFRINGEMENT**

55. Plaintiff hereby incorporates and realleges paragraphs one (1) through fifty-four (54) as if fully set forth herein.

56. This count arises under the Georgia common law of trademark infringement.

57. Plaintiff's AEM-GA trademarks are distinctive and recognized as denoting a high quality of services and products to the public in those counties throughout Georgia and the United States. Due to such reputation and public awareness, Plaintiff has established valuable goodwill in connection with its AEM-GA trademarks.

58. Defendant's adoption and use in Georgia of the AEM-MASS marks, which are confusingly similar to Plaintiff's AEM-GA trademarks, is likely to cause confusion or mistake and has and will deceive the public into associating Defendant's goods and/or services with Plaintiff.

59. These acts constitute common law trademark infringement for which Plaintiff has no adequate remedy at law.

**COUNT VI**

**GEORGIA COMMON LAW OF UNFAIR COMPETITION**

60. Plaintiff hereby incorporates and realleges paragraphs one (1) through fifty-nine (59) as if fully set forth herein.

61. This count arises under the Georgia common law of unfair competition.

62. The adoption and use by Defendant of the AEM-ASS marks in Georgia constitutes unlawful appropriation of Plaintiff's exclusive rights in and to its AEM-GA trademarks and such unauthorized use has caused and is causing damage and irreparable injury to Plaintiff.

63. The foregoing acts of Defendant constitute unfair competition and infringement of Plaintiff's common law rights in its AEM-GA trademarks. Such unfair competition and infringement will continue unless enjoined by this Court.

64. Plaintiff has no adequate remedy at law.

**COUNT VII**

**BREACH OF CONTRACT**

65. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-four (64) as if fully set forth herein.

66. As a member in AEM-GA, Defendant Pugh owed contractual duties to his partner Stephen Sanford and to AEM-GA to act in good faith, using his best efforts in furtherance of and in the best interests of the company.

67. Defendant Pugh has breached the contract in one or more of the following particulars: a) by terminating AEM-GA without authority; b) by creating AEM-MASS to directly compete for business with AEM-GA; c) by converting business opportunities of AEM-GA to the use of AEM-MASS; d) by trying to use the credit of AEM-GA to purchase product for the use of AEM-MASS; e) by trying to convert the Dun & Bradstreet rating of AEM-GA to AEM-MASS; f) by notifying AEM-GA clients and vendors that it had been terminated as a business entity; g) by failing to use his best efforts in furtherance of and in the best interests of AEM-GA; by failing to use his best efforts to manage the business interests of AEM-GA.

68. Defendant Pugh's actions have been taken with a wanton indifference to the damage he has caused Plaintiffs.

69. Defendant Pugh's breach of contract has caused economic damages to Plaintiffs in an amount to be proven at trial.

70. Plaintiffs are entitled to a judgment against Defendant Pugh for breach of contract in an amount to be proven at trial.

**COUNT VIII**

**FRAUD BY DEFENDANT PUGH**

71. Plaintiff hereby incorporates and realleges paragraphs one (1) through seventy (70) as if fully set forth herein.

72. Defendant Pugh has committed fraud in one or more of the following particulars: a) by terminating AEM-GA without authority; b) by creating AEM-MASS to directly compete for business with AEM-GA prior to his dissolution of AEM-GA; c) by converting business opportunities of AEM-GA to the use of AEM-MASS; d) by trying to use the credit of AEM-GA to purchase product for the use of AEM-MASS; e) by trying to convert the Dunn & Bradstreet rating of AEM-GA to AEM-MASS; f) by notifying AEM-GA clients and vendors that it had been terminated as a business entity; g) by notifying the Georgia Secretary of State that he was a resident of the State of Georgia when he was not.

73. Defendant Pugh's actions have been taken with a wanton indifference to the damage he has caused Plaintiffs.

74. Defendant Pugh's fraudulent conduct has caused economic damages to Plaintiffs in an amount to be proven at trial.

75. Plaintiffs are entitled to a judgment against Defendant Pugh for fraud in an amount to be proven at trial.

**WHEREFORE, Plaintiff requests a judgment as follows:**

1.    That Defendants, its officers, agents, servants, employees, and attorneys, be forthwith preliminarily enjoined and restrained from using "ALTERNATIVE ENERGY MANAGEMENT" and "AEM", in word or design form, or other designations confusingly similar to Plaintiff's AEM-GA trademarks during the pendency of this civil action, and thereafter permanently enjoined and restrained from using "ALTERNATIVE ENERGY MANAGEMENT" and "AEM", in word or design form, or any other designation confusingly similar to Plaintiff's AEM-GA trademarks in connection with advertising, promotion, offering for sale or sale of alternative energy related products and services, energy consulting services, energy efficient lighting, energy management systems, alternative energy sources and indoor air quality systems word and design, that do not emanate from or originate with Plaintiffs.

2.    That Defendants be directed to file with this Court and serve on Plaintiffs within thirty days after the service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

3.     That Defendants be required to deliver up and destroy all labels, devices, literature, adverting and other material bearing the "ALTERNATIVE ENERGY MANAGEMENT" and "AEM" word or design marks.

4.     That the Court adjudge and decree that Defendant AEM-MASS marks are infringing trademarks in violation of 15 U.S.C. §1114, that Defendant's conduct serves to designate falsely the origin of its products, and falsely describes such products, and constitutes false representation and advertising in connection with the promotion, offering for sale, and sale of such products, all in violation of 15 U.S.C. §1125, and that the Defendants have competed unfairly with Plaintiffs at common law.

5.     That the Court adjudge and decree that Defendants' conduct constitutes a violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §10-1-372 and that Plaintiffs have judgment against Defendants, jointly and severally, for same in an amount to be proven at trial.

6.     That the Court adjudge and decree that Defendants' conduct constitutes fraud in violation of O.C.G.A. §23-2-55 and that Plaintiffs have judgment against Defendants for same, jointly and severally, in an amount to be proven at trial.

7.      That the Court adjudge and decree that Defendant Pugh's conduct constitutes breach of fiduciary duties and that Plaintiffs have judgment against Defendant Pugh, for same in an amount to be proven at trial.

8.      That the Court require a full and complete accounting of all monies received by the Defendants as a result of the wrongful offering for sale or sale of products and/or services under its infringing AEM-MASS marks, together with an order transferring to Plaintiffs any amounts found to be due to Defendants.

9.      That Plaintiffs be awarded Defendants' profits or Plaintiff's damages from lost sales after an accounting, and that such award be increased as permitted, including being trebled as provided under 15 U.S.C. § 1117.

10.     That Plaintiffs have and recover its costs and attorney's fees from Defendant, including as provided by 15 U.S.C. §1117 and O.C.G.A. §10-1-373.

11.     That the Court award interest on all monies found to be due to Plaintiffs from Defendants, at the then prevailing or legal rate, whichever is greater, from the date said amounts or any part thereof became or become due.

12.     That the Court require Defendants to notify its commercial associates, suppliers and customers of said Court Order.

13. That Plaintiffs' have judgment against Defendants, jointly and severally, for breach of contract in an amount to be proven at trial.

14. That Plaintiffs have judgment against Defendant Pugh for fraud in an amount to be proven at trial.

15. That Plaintiffs be awarded such other and further relief as this Court may deem just and proper.

Respectfully submitted this 12th day of June, 2018.

Respectfully Submitted,

Scott T. Bushnell
GA Bar No.: 098980
Attorney for Plaintiffs

Prepared By:
Scott T. Bushnell
Bushnell & Drye, LLC
2 Ravinia Dr., Suite 1500
Atlanta, GA 30346
O: 404-869-1201
F: 770-394-0333
SBushnell@BDHAlaw.com

# Exhibit A

ERNATIVE
NERGY
MANAGEMENT, LLC
An Energy, Power & Air Quality
Solutions Company

# Exhibit B

# LIMITED LIABILITY COMPANY OPERATING AGREEMENT FOR Alternative Energy Management, LLC

*A Manager-Managed Limited Liability Company*

---

**This Operating Agreement** (the "Agreement") made and entered into this **1st day of January, 2010** (the "Execution Date"),

**AMONGST**

Stephen T. Sanford of 3415 Brightmoore Ct, Dacula, GA 30019,
B. Frank Pugh of 89 Spofford Rd Boxford, MA 01921, and
Donald Lowe of 82 Country Charm Lane, Galax, GA 24333

(Individually the "Member" and collectively the "Members")

**BACKGROUND**

A. The Members wish to associate themselves as members of a limited liability company.

B. The terms and conditions of this Agreement will govern the members within the limited liability company.

**IN CONSIDERATION OF** and as a condition of the Members entering into this Agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties to this Agreement agree as follows:

---

## ARTICLE I
## Company Formation

1.1 **FORMATION**- By this Agreement the Members form a Limited Liability Company (the "Company") in accordance with the laws of the State of Georgia. The rights and obligations of the Members will be as stated in the Georgia Limited Liability Company Act (the "Act") except as otherwise provided here.

1.2 **NAME**. The name of the Company shall be: **Alternative Energy Management, LLC (dba AEM, LLC)**.

1.3 **REGISTERED AGENT**. The name and location of the registered agent of the Company shall be:

Stephen T. Sanford
3415 Brightmoore Ct
Dacula, GA 30019

1.4 **TERM**. The Company shall continue for a perpetual period.

(a) Members whose capital interest as defined in Article 2.2 exceeds 45 percent vote for dissolution; or

(b) Any event which makes it unlawful for the business of the Company to be carried on by the Members; or

(c) The death, resignation, expulsion, bankruptcy, retirement of a Member or the occurrence of any other event that terminates the continued membership of a Member of the Company; or

(d) Any other event causing dissolution of this Limited Liability Company under the laws of the State of Georgia.

1.5 **CONTINUANCE OF COMPANY**. Notwithstanding the provisions of ARTICLE 1.4, in the event of an occurrence described in ARTICLE 1.4(c), if there are at least two remaining Members, said remaining Members shall have the right to continue the business of the Company. Such right can be exercised only by the unanimous vote of the remaining Members within ninety (90) days after the occurrence of an event described in ARTICLE 1.4(c). If not so exercised, the right of the Members to continue the business of the Company shall expire.

1.6 **BUSINESS PURPOSE**. The purpose of **AEM, LLC** is to provide energy consulting, energy assessments (auditing) services and reseller of products (i.e. Power Conditioning systems, Energy Efficient Lighting, Energy Management Systems (PEMS), Alternative Energy Sources (Solar, Wind and Biofuels), Rebate assistances and Indoor Air quality systems that will help track and reduce the energy requirements of a company.

1.7 **PRINCIPAL PLACE OF BUSINESS** - The location of the principal place of business of the Company shall be:

3415 Brightmoore Ct.
Dacula, GA 30019

Principal place of business may be changed at a location the Managers from time to time select as long as it adheres to the definition of a State of GA domestic LLC .

1.8 **THE MEMBERS**. The name and place of residence of each member are contained in Exhibit 2 attached to this Agreement.

A. **Membership Classes**

Members will be divided into classes. Each class will have distinct rights and obligations as follows:

| Member Class | Duties and Obligations | Voting |
|---|---|---|
| Class A | Operations and sales of all services provide by the company. Members will be paid 60% of the profit margin for their sales effort with the remaining 40% being contributed to AEM. Members of this class will have the option to change the above percentages on a as needed basis. Class A members will share in any profits (loss) of the company. | Yes |
| Class B | Class B members will responsible for sales of all AEM products only. Members will be paid 60% | No |

| | of the profit margin for their sales effort with the remaining 40% being contributed to AEM. Class A members can reduce the 60% profit margin based on effort provided to the Class B member. Class B members will not share in the profit (loss) of the company (40% contribution of sale). Class B members may become Class A members upon the approval of the Class A members and a investment in the company as defined by the Class A members. | |
|---|---|---|

The following is a list of all Members and the membership class to which they belong:

| Member | Member Class |
|---|---|
| Stephen T. Sanford | Class A |
| B. Frank Pugh | Class A |
| Donald Lowe | Class B |

1.9 **ADMISSION OF ADDITIONAL MEMBERS** - Except as otherwise expressly provided in the Agreement, no additional members may be admitted to the Company through issuance by the company of a new interest in the Company, without the prior unanimous written consent of the Members.

**ARTICLE II**

**Capital Contributions**

2.1 **INITIAL CONTRIBUTIONS**. The Members initially shall contribute to the Company capital as described in Exhibit 3 attached to this Agreement. The agreed total value of such property and cash is $10,000.

2.2 **ADDITIONAL CONTRIBUTIONS**. Except as provided in ARTICLE 6.2, no Member shall be obligated to make any additional contribution to the Company's capital.

2.3 **INTEREST ON CAPITAL CONTRIBUTIONS.** Members are **not** entitled to interest or other compensation for or on account of their capital contributions to the Company except to the extent, if any, expressly provided in this Agreement.

2.4 **BUSINESS TRANSACTIONS OF A MEMBER WITH THE COMPANY.** A Member may lend money to, borrow money from, act as surety, guarantor or endorser for, guarantee or assume one or more obligations or, provide collateral for, and transact other business with, the Company and, subject to applicable law shall have the same rights and obligations with respect to any such matter as a Person who is not a Member.

## ARTICLE III

### Profits, Losses and Distributions

3.1 **PROFITS/LOSSES.** For financial accounting and tax purposes the Company's net profits or net losses shall be determined on an annual basis and shall be allocated to the Class A Members in proportion to each Member's relative capital interest in the Company as set forth in Exhibit 2 as amended from time to time in accordance with Treasury Regulation 1.704-1.

3.2 **DISTRIBUTIONS** The Class A Members shall determine and distribute available funds annually or at more frequent intervals as they see fit. Available funds, as referred to herein, shall mean the net cash of the Company available after appropriate provision for expenses and liabilities, as determined by the Managers. Distributions in liquidation of the Company or in liquidation of a Class A Member's interest shall be made in accordance with the positive capital account balances pursuant to Treasury Regulation 1.704-l(b)(2)(ii)(b)(2). To the extent a Class A Member shall have a negative capital account balance, there shall be a qualified income offset, as set forth in Treasury Regulation 1.704-l(b)(2)(i)(d).

3.3 **RIGHT TO DEMAND RETURN OF CAPITAL.** No Member has any right to any return of capital or other distribution except as expressly provided in this Agreement No Member has any drawing account in the Company

## ARTICLE IV
### Management

4.1 **MANAGEMENT OF THE BUSINESS** The name and place of residence of each Manager is attached as Exhibit 1 of this Agreement. By a vote of the Class A Members holding a majority of the capital interests in the Company, as set forth in Exhibit 2 as amended from time to time, shall elect so many Managers as the Members determine, but no fewer than one, with one Manager elected by the Members as Chief Executive Manager. The elected Manager(s) may either be a Member or Non-Member.

4.2 **MEMBERS**. The liability of the Members shall be limited as provided pursuant to applicable law. Members that are not Managers shall take no part whatever in the control, management, direction, or operation of the Company's affairs and shall have no power to bind the Company. The Managers may from time to time seek advice from the Members, but they need not accept such advice, and at all times the Managers shall have the exclusive right to control and manage the Company No Member shall be an agent of any other Member of the Company solely by reason of being a Member. A Member has no power to withdraw from the Company, except as otherwise provided in Article 7.

4.3 **POWERS OF MANAGERS.** The Class A Managers are authorized on the Company's behalf to make all decisions as to (a) the sale, development lease or other disposition of the Company's assets (b) the purchase or other acquisition of other assets of all kinds; (c) the management of all or any part of the Company's assets (d) the borrowing of money and the granting of security interests in the Company's assets; (e) the pre-payment, refinancing or extension of any loan affecting the Company's assets; (f) the compromise or release of any of the Company's claims or debts and (g) the employment of persons, firms or corporations for the operation and management of the company's business. In the exercise of their management powers, the Managers are authorized to execute and deliver (a) all contracts, conveyances, assignments leases, subleases, franchise agreements, licensing agreements. management contracts and maintenance contracts covering or affecting the Company's assets; (b) all checks, drafts and other orders for the payment of the Company's funds; (c) all promissory notes. loans, security

agreements and other similar documents; and, (d) all other instruments of any other kind relating to the Company's affairs whether like or unlike the foregoing.

4.4 **CHIEF EXECUTIVE MANAGER**. The Chief Executive Manager shall have primary responsibility for managing the operations of the Company and for effectuating the decisions of the Class A Managers.

4.5 **NOMINEE**. Title to the Company's assets shall be held in the Company's name or in the name of any nominee that the Class A Managers may designate. The Class A Managers shall have power to enter into a nominee agreement with any such person, and such agreement may contain provisions indemnifying the nominee, except for his willful misconduct.

4.6 **COMPANY INFORMATION**. Upon request, the Class A Managers shall supply to any member information regarding the Company or its activities during normal business hours after giving of reasonable notice of this intent. Each Class A Member or his authorized representative shall have access to and may inspect and copy all books, records and materials in the Class A Manager's possession regarding the Company or its activities. Each Member gaining access to the books and records of the Company shall hold this information confidential. Upon withdrawal or departure as a member of the Company, a member shall deliver all the Company books and records in his or her possession to the remaining Company members or managers. The exercise of the rights contained in this ARTICLE 4.6 shall be at the requesting Member's expense.

4.7 **EXCULPATION**. Any act or omission of the Managers, the effect of which may cause or result in loss or damage to the Company or the Members if done in good faith to promote the best interests of the Company, shall not subject the Managers to any liability to the Members.

4.8 **INDEMNIFICATION**. The Company shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the Company) by reason of the fact that he is or was a Member of the Company, Manager, employee or agent of the Company, or is or was serving at the request of the Company, for instant expenses (including attorney's fees), judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with such action, suit or proceeding if the Members determine that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Company, and with respect to any criminal action proceeding, has no reasonable cause to believe his/her conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of "no lo Contendere" or its equivalent, shall not in itself create a presumption that the person did or did not act in good faith and in a manner which he reasonably believed to be in the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his/her conduct was lawful.

4.9 **RECORDS**. The Managers shall cause the Company to keep at its principal place of business the following:

(a) a current list in alphabetical order of the full name and the last known street address of each Member;

(b) a copy of the Certificate of Formation and the Company Operating Agreement and all amendments;

(c) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years;

(d) copies of any financial statements of the limited liability company for the three most recent years.

**ARTICLE V**

**SALARIES, REIMBURSEMENT, AND PAYMENT OF EXPENSES**

**5.1** **MANAGEMENT FEE.** Any Manager rendering services to the Company shall be entitled to compensation commensurate with the value of such services to be determined by a majority of the Class A members.

**5.2** **REIMBURSEMENT.** The Company shall reimburse the Managers or Members for all direct out-of-pocket expenses incurred by them in managing the Company.

**5.3** **SALARY.** No salary will be paid to a Member for the performance of his or her duties under this Agreement unless the salary has been approved in writing by a Majority of the Members.

**5.4** **LEGAL AND ACCOUNTING SERVICES.** The Company may obtain legal and accounting services to the extent reasonably necessary for the conduct of the Company's business.

**ARTICLE VI**

**Bookkeeping**

**6.1** **BOOKS.** The Managers shall maintain complete and accurate books of account of the Company's affairs at the Company's principal place of business. Such books shall be kept on such method of accounting as the Managers shall select. The company's accounting period shall be the calendar year.

**6.2** **MEMBER'S ACCOUNTS.** The Managers shall maintain separate capital and distribution accounts for each Class A member. Each Class A member's capital account shall be determined and maintained in the manner set forth in Treasury Regulation 1.704-l(b)(2)(iv) and shall consist of his initial capital contribution increased by:

(a) any additional capital contribution made by him/her;

(b) credit balances transferred from his distribution account to his capital account;

and decreased by:

- distributions to him/her in reduction of Company capital;
- the Class A Member's share of Company losses if charged to his/her capital account.

**6.3** **REPORTS.** The Managers shall close the books of account after the close of each calendar year, and shall prepare and send to each Class A member a statement of such Member's distributive share of income and expense for income tax reporting purposes

**6.4** **BANKING.** All funds of the Company will be deposited in a separate bank account or in an account or accounts of a savings and loan association in the name of the Company as determined by a Majority of the Members. Company funds will be invested or deposited with an institution, the accounts or deposits of which are insured or guaranteed by an agency of the United States government.

**ARTICLE VII**

**Transfers**

**7.1** **SALE OR ENCUMBRANCE PROHIBITED.** Except as otherwise permitted in this Agreement, no Class A Member may voluntarily or involuntarily transfer, sell, convey, encumber, pledge, assign, or otherwise dispose of (collectively, "Transfer") an interest in the Company without the prior

written consent of a majority of the other non-transferring Members determined on a per capita basis. [illegible] members may not sell or transfer their interest in the company.

7.2 **RIGHT OF FIRST REFUSAL**. Notwithstanding Article 7.1, a Class A Member may transfer all or any part of the Members interest in the Company (the "Interest") as follows:

7.2.1 The Class A Member desiring to transfer his or her Interest first must provide written notice (the "Notice") to the other Class A Members, specifying the price and terms on which the Class A Member is prepared to sell the Interest (the "Offer").

7.2.2 For a period of (30) days after receipt of the Notice, the Class A Members may acquire all, but not less than all, of the Interest at the price and under the terms specified in the Offer. If the other Members desiring to acquire the Interest cannot agree among themselves on the allocation of the Interest among them, the allocation will be proportional to the ownership interests of those Members desiring to acquire the Interest.

7.2.3 Closing of the sale of the Interest will occur as stated in the Offer, provided, however, that [illegible] will not be less than 45 days after expiration of the 30-day notice period.

7.2.4 If the other Class A Members fail or refuse to notify the transferring Member of their desire to acquire all of the Interest proposed to be transferred within the 30-day period following receipt of the Notice, then the Members will be deemed to have waived their right to acquire the Interest on the terms described in the Offer and the transferring Class A Member may sell and convey the Interest consistent with the Offer to any other person or entity; provided, however, that notwithstanding anything in Article 7.2 to the contrary, should the sale to a third person be at a price or on terms that are more favorable to the purchaser than stated in the Offer, then the transferring Class A Member must reoffer the sale of the Interest to the remaining Members at that other price or other terms; provided, further, that if the sale to a third person is not closed within six months after the expiration of the 30-day period described above, then the provisions of Article 7.2 will again apply to the Interest proposed to be sold or conveyed.

7.2.5 Notwithstanding the foregoing provisions of Article 7.2, should the sole remaining Class A Member be entitled to and elect to acquire all the Interests of the other Members of the Company in accordance with the provisions of Article 7.2, the acquiring Class A Member may assign the right to acquire the Interests to a spouse, lineal descendent, or an [illegible] if the assignment is reasonably believed to be necessary to continue the [illegible] of the Company as a limited liability company.

7.3 **SUBSTITUTED PARTIES**. Any transfer in which the Transferee becomes a fully substituted Member [illegible] unless and until:

(1) The transferor and assignee execute and deliver to the Company the documents and instruments of conveyance [illegible] necessary, or appropriate in the opinion of counsel to the Company to effect the transfer and to confirm the agreement of the permitted assignee to be bound by the provisions [illegible]; and

(2) [illegible] furnishes to the Company an opinion of counsel satisfactory to the Company, that the transfer will not cause the Company to terminate for federal income tax purposes or that any termination is not adverse to the Company or the other Members.

7.4 **DEATH, [illegible] AND BANKRUPTCY OF MEMBER**. On the death, adjudicated incompetence [illegible] of a Member, unless the Company exercises its rights under Article 7.5, the [illegible] to the Member (whether an estate, bankruptcy trustee, or otherwise)

will receive only the economic right to receive distributions whenever made by the Company and the Class A Member's allocable share of taxable income, gain, loss, deduction, and credit (the "Economic Rights") unless and until a majority of the other Members determined on a per capita basis admit the transferee as a fully substituted Member in accordance with the provisions of Article 7.5.

7.4.1 Any transfer of Economic Rights pursuant to Article 7.4 will not include any right to participate in management of the Company, including any right to vote, consent to, and will not include any right to information on the Company or its operations or financial condition. Following any transfer of only the Economic Rights of a Member's Interest in the Company, the transferring Member's power and right to vote or consent to any matter submitted to the Members will be eliminated, and the Ownership Interests of the remaining Members, for purposes only of such votes, consents, and participation in management, will be proportionately increased until such time, if any, as the transferee of the Economic Rights becomes a fully substituted Member.

7.5 **DEATH [illegible].** Notwithstanding the foregoing provision of Article 7, the Members covenant and agree that on the death of any Member, the Company, at its option, by providing written notice to the estate of the deceased Member within 180 days of the death of the Member, may purchase, acquire, and redeem the Interest of the deceased Member in the Company pursuant to the provisions of Article 7.5.

7.5.1 The value of each Member's Interest in the Company will be determined on the date this Agreement is signed, and the value will be endorsed on Schedule 3 attached and made a part of this Agreement. The value of each Member's Interest will be re-determined unanimously by the Members annually, unless the Members unanimously decide to re-determine those values more frequently. The Members will use their best efforts to endorse these values on Exhibit 3. The purchase price for a decedent Member's interest [illegible] is the value last determined before the death of such Member; provided, however, that if the latest valuation is more than two years before the death of the [illegible], the provisions of Article 7.5.2 will apply in determining the value of the Member's Interest in the Company.

7.5.2 If the Members have failed to value the deceased Member's Interest within the prior two-year period, the value of each Member's Interest in the Company on the date of death, in [illegible], will be determined by mutual agreement of the surviving Members and the personal representative of the estate of the deceased Member. If the parties cannot reach an agreement on the value within 30 days after the appointment of the personal representative of the deceased Member, then the surviving Members and the personal representative each must select a qualified appraiser within the next succeeding 30 days. The appraisers so selected must attempt to determine the value of the Company Interest owned by the decedent at the time of death based solely on their appraisal of the total value of the Company's assets and the amount the decedent would have received had the assets of the Company been sold at that time for an amount equal to their fair market value and the proceeds (after payment of all Company obligations) were distributed in the [illegible] in Article 7. The appraisal may not consider and discount for the [illegible] interest in the Company. In the event the appraisers cannot agree on the value within 30 days after being selected, the two appraisers must, within 30 days, select a third appraiser. The value of the interest of the decedent in the Company and the purchase price of it will be the average of the two appraisals nearest in amount to one

[illegible] will be final and binding on all parties and their respective successors, assigns and representatives. The costs and expenses of the third appraiser and any costs and expenses of the appraiser retained but not paid for by the estate of the deceased Member will be offset against the purchase price paid for the deceased Member's Interest in the Company.

7.5.3 Closing of the sale of the deceased Member's Interest in the Company will be held at the office of the Company on a date designated by the Company, not be later than 90 days after agreement with the personal representative of the deceased Member's estate on the fair market value of the deceased Member's Interest in the Company; provided, however, that if the purchase price are determined by appraisals as set forth in Article 7 5 2, the closing will be [illegible] days after the final appraisal and purchase price are determined. If no personal representative has been appointed within 60 days after the deceased Member's death, the surviving Members have the right to apply for and have a personal representative appointed.

7.5.4 At closing, the Company will pay the purchase price for the deceased Member's Interest in the Company. If the purchase price is less than $1,000.00, the purchase price will be paid in cash. If the purchase price is $1,000.00 or more, the purchase price will be paid as follows:

(1) [illegible] in cash, bank cashier's check, or certified funds;

(2) The balance of the purchase price by the Company executing and delivering its promissory note for the balance, with interest at the prime interest rate stated by primary banking institution utilized by the Company, its successors and assigns, at the time of the deceased Member's death. Interest will be payable monthly, with the principal sum being due and payable in three equal annual installments. The promissory note will be unsecured and will contain provisions that the principal sum may be paid in whole or in part at any time, without penalty.

7.5.5 At the closing, the deceased Member's estate or personal representative must assign to the Company all of the deceased Member's Interest in the Company free and clear of all liens, claims, and encumbrances, and, at the request of the Company, the estate or personal representative must execute all other instruments as may reasonably be necessary to vest in the Company all of the deceased Member's right, title, and interest in the Company and its assets. If either the Company or the deceased Member's estate or personal representative fails or refuses to execute any instrument required by this Agreement, the other party is hereby granted the irrevocable power of attorney which, it is agreed, is coupled with an interest, to execute and deliver on behalf of the failing or refusing party all instruments required to be executed and delivered by the failing or refusing party.

7.5.6 On completion of the purchase of the deceased Member's Interest in the Company, the Ownership Interests of the remaining Members will increase proportionately to their then existing Ownership Interests.

## ARTICLE VIII

## DISSOLUTION AND WINDING UP OF THE COMPANY

8.1 **DISSOLUTION.** The Company will be dissolved on the happening of any of the following events:

8.1.1 Sale, transfer, or other disposition of all or substantially all of the property of the Company;

8.1.2 The agreement of all of the Members;

8.1.3 By operation of law; or

8.1.4 The death, incompetence, expulsion, or bankruptcy of a Member, or the occurrence of any event that terminates the continued membership of a Member in the Company, unless there are then remaining at least the minimum number of Members required by law and all of the remaining Members, within 120 days after the date of the event, elect to continue the business of the Company.

8.2 **WINDING UP.** On the dissolution of the Company (if the Company is not continued), the Members [illegible] the Company's assets and liabilities, and the assets will be liquidated as promptly as is consistent with obtaining their fair value, and the proceeds, to the extent sufficient to pay the Company's obligations with respect to the liquidation, will be applied and distributed, after any gain or loss realized in connection with the liquidation has been allocated [illegible] 3 of this Agreement, and the Members' Capital Accounts have been [illegible] the allocation and all other transactions through the date of the distribution, in the following order:

8.2.1 [illegible] of the expenses of liquidation and of all the Company's debts and liabilities to persons or organizations other than Members;

8.2.2 To the payment and discharge of any Company debts and liabilities owed to Members; and

8.2.3 [illegible] the amount of their respective adjusted Capital Account balances on the date of distribution; provided, however, that any then outstanding Default Advances (with [illegible]) must be repaid from distributions otherwise allocable [illegible] pursuant to Article 9.2.3.

## ARTICLE IX

## GENERAL PROVISIONS

9.1 **ADMENDMENTS.** [illegible] this Agreement may be proposed by any Member. A proposed [illegible] and become effective [illegible] only on the written approval [illegible].

9.2 **GOVERNING LAW.** This Agreement and the rights and obligations of the parties under it are governed by and interpreted in accordance with the laws of the State of Georgia (without regard to principles of conflicts of law).

9.3 **ENTIRE AGREEMENT; MODIFICATION.** This Agreement constitutes the entire understanding and agreement [illegible] with respect to the subject matter of this Agreement. No agreements, understandings, restrictions, representations, or warranties exist between or among the members other than those in this Agreement or referred to or provided for in this Agreement. No modification or amendment of any provision of this Agreement will be binding on any Member unless in writing and signed by all the Members.

9.4 **ATTORNEY FEES.** [illegible] suit or action to enforce or interpret any provision of this Agreement [illegible] this Agreement), the prevailing party is entitled to recover, in addition [illegible] reasonable attorney fees in connection with the suit, action, or arbitration, and in any appeals. The determination of who is the prevailing party and the amount of reasonable attorney fees to be paid to the prevailing party will be decided by the court or courts, including any appellate courts, in which the matter is tried, heard, or decided.

**9.5 FURTHER EFFECT.** The parties agree to execute other documents reasonably necessary to further effect and evidence the terms of this Agreement, as long as the terms and provisions of the other documents are fully consistent with the terms of this Agreement.

**9.6 SEVERABILITY.** If any term or provision of this Agreement is held to be void or unenforceable, that term or provision will be severed from this Agreement, the balance of the Agreement will survive, and the balance of this Agreement will be reasonably construed to carry out the intent of the parties as evidenced by the terms of this Agreement.

**9.7 CAPTIONS.** The captions used in this Agreement are for the convenience of the parties only and will not be interpreted to enlarge, contract, or alter the terms and provisions of this Agreement.

**9.8 NOTICES.** All notices required to be given by this Agreement will be in writing and will be effective when actually delivered or, if mailed, when deposited as certified mail, postage prepaid, directed to the addresses first shown above for each Member or to such other address as a Member may specify by notice given in conformance with these provisions to the other Members.

**CERTIFICATE OF FORMATION**

This Company Operating Agreement is entered into and shall become effective as of the Effective Date by and among the Company and the persons executing this Agreement as Members. It is the Members express intention to create a limited liability company in accordance with applicable law, as currently written or subsequently amended or redrafted.

The undersigned hereby agree, acknowledge, and certify that the foregoing operating agreement is adopted and approved by each member, the agreement consisting of 11 pages, constitutes, together with Exhibit 1, Exhibit 2 and Exhibit 3, the Operating Agreement of Alternative Energy Management, LLC, adopted by the members as of January 4, 2010

**Members/Managers:**

Signature
Percent: 49%

**Printed Name** Stephen T. Sanford

Signature
Percent: 51%

**Printed Name** B. Frank Pugh

Signature
Percent 0%

**Printed Name** David Lowe

**EXHIBIT 1**

**LIMITED LIABILITY COMPANY OPERATING AGREEMENT**
**FOR**
**Alternative Energy Management, LLC**

**LISTING OF MANAGERS**

By a majority vote of the Members the following Managers were elected to operate the Company pursuant to ARTICLE 4 of the Agreement:

Printed Name Stephen T. Banford
President & CEO

3415 Brighton [illegible]
Dacula, GA 300[illegible]

Printed Name B. Frank Pugh
VP Business Development

89 Spofford Rd.
Boxford, MA 01[illegible]

The above listed Managers will serve in their capacities until they are removed for any reason by a majority vote of the Members as defined by ARTICLE 4 or upon their voluntary resignation.

Signed and agreed this 1[illegible] day of [illegible], 20[illegible]

Signature of Member — Printed Name: Stephen T. Banford

Signature of Member — Printed Name: B. Frank Pugh

Signature of Member — Printed Name: Donald Lowe

# EXHIBIT 2

## LIMITED LIABILITY COMPANY OPERATING AGREEMENT
## FOR
## Alternative Energy Management, LLC

### LISTING OF MEMBERS

As of the 1st day of January, 2010 the following is a list of Members of the Company:

**Name:** Stephen T. Sanford **Percent** 49%

**Address:** 34.5 [illegible]

**Name:** B Frank Pugh Percent 51%

Address: 85 Spofford Rd, Boxford, MA 01921

**Name:** Donald [illegible] Percent 0%

Address 82 Country Charm Lane. Galax, VA 24333

Authorized by Member(s) to provide Member Listing as of this 1st day of January, 2010.

Signature of Member

Signature of Member

Signature of Member

**EXHIBIT 3**

**LIMITED LIABILITY COMPANY OPERATING AGREEMENT**
**FOR**
**Alternative Energy Management, LLC**

**CAPITAL CONTRIBUTIONS**

Pursuant to ARTICLE 2, the Members' initial contribution to the Company capital is stated to be $10,000. The description and each individual portion of this initial contribution is as follows:

| | |
|---|---|
| Stephen T. Sanford | $4,900.00 |
| B. Frank Pugh | $5,100.00 |
| Donald Lowe | $0.00 |

SIGNED AND AGREED this 1st day of January, 2010.

Member

Member

Member

# Exhibit C

**ADDENDUM TO ALTERNATIVE ENERGY OPERATING AGREEMENT**

Per our conference call between B. Frank Pugh (herein referred to as BFP), Don Lowe (herein referred to as DL) and Stephen T. Sanford (herein referred to as STS) and our call afterwards between BFP & STS, I have revised our operating agreement adding the additional terms as outlined below to allow you (BFP) to submit the appropriate paperwork to the VA to take advantage of his service disabled veteran status to assist AEM, LLC to do business with the federal government. Here are the following terms that we (BFP, DL and STS) agreed upon during both calls which include:

1. STS will provide BFP 1% of my 50% share in AEM, LLC operating agreement, so we can be certified and verified as a Service Disabled Veteran Owned Small Business (SDVOSB) with the VA. BFP do the application in a timely fashion (within a year unless authorization to extend is given by STS) and BFP must show STS the final certification/verification that AEM, LLC has been verified as a Service Disabled Veteran Owned Small Business (SDVOSB) by the VA. Until the certification/verification by the VA has been completed, STS will retain his 1% share in AEM, LLC
2. I reserve the right to reclaim my 1% at anytime during our LLC operations with written notice to BFP. I will retain a 50% percentage for voting purposes to change any of the operating agreement procedures, and the 1% I provided to Frank cannot be used to oust me from the company. If the voting on operational changes to the OA is 50% (BFP) to 50% (STS), then DL will have the tie breaking vote for such changes.
3. Once AEM, LLC is certified/verified by the VA, then all government sales will be split 70% (divided equally between BFP and STS)-30% goes to AEM, LLC
4. AEM, LLC will remain a GA domestic LLC with the principal address at 3415 Brightmoore Ct., Dacula, GA. 30019 as required by the State of GA domestic LLC definition. All accounting functions will remain at the principal address of the company as defined in the Operating Agreement complying with the definitions of a State of GA domestic LLC.
5. Per our conference call between BFP, DL and STS, the following was acknowledged and agreed upon by all parties that STS acquired the Alternative Energy Management, LLC (AEM, LLC) domain name, created the logo, website and all marketing material with his own funds. If something happened to the company, BFP said he didn't care about the name and acknowledges that STS could retain all company information including the domain name, logo and website as well. AEM, LLC currently rents the domain name, website and all web-based tools to operate the website (i.e. web mail) from STS at cost. All parties acknowledge that the ownership of the domain name, website, logo, company information including all customers (unless otherwise agreed upon by the Class A members) and tools used to operated the AEM, LLC website will revert back to STS if the company is dissolved.

By signing below, all parties agree that the above terms and conditions are added to the AEM, LLC final Operating Agreement and will be the additional terms and conditions will be binding and supersede any conflicting terms and conditions in the final operating agreement

SIGNED AND AGREED this 1st day of January, 2010.

[signature]
Member

[signature: B. Frank Pugh]
Member

[signature: Donald Lowe]
Member

# Exhibit D

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

**Annual Registration**

*Electronically Filed*
Secretary of State
Filing Date: 04/21/2017 17:09:55

| | |
|---|---|
| **BUSINESS NAME** | : ALTERNATIVE ENERGY MANAGEMENT, LLC |
| **CONTROL NUMBER** | : 08056759 |
| **BUSINESS TYPE** | : Domestic Limited Liability Company |

| | |
|---|---|
| **PRINCIPAL OFFICE ADDRESS** | : 3415 Brightmoore Ct, Dacula, GA, 30019, USA |
| **REGISTERED AGENT NAME** | : Sanford, Stephen T |
| **REGISTERED OFFICE ADDRESS** | : 3415 Brightmoore Ct, Gwinnett, Dacula, GA, 30019, USA |

| | |
|---|---|
| **PRINCIPAL OFFICE ADDRESS** | : 1132 Brandenberry Lane, Auburn, GA, 30011, USA |
| **REGISTERED AGENT NAME** | : Benjamin F Pugh |
| **REGISTERED OFFICE ADDRESS** | : 1132 Brandenberry Lane, Fulton, Auburn, GA, 30011, USA |

| | |
|---|---|
| **AUTHORIZER SIGNATURE** | : Benjamin F Pugh |
| **AUTHORIZER TITLE** | : Registered Agent |

# Exhibit E

MA SOC Filing Number: 201733859600 Date: 4/22/2017 2:33:00 PM

**The Commonwealth of Massachusetts**
**William Francis Galvin**

Minimum Fee: $500.00

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

## Certificate of Organization
(General Laws, Chapter )

**Identification Number:** 001270447

**1. The exact name of the limited liability company is:** ALTERNATIVE ENERGY MANAGEMENT, LLC

**2a. Location of its principal office:**
No. and Street: 89 SPOFFORD RD
City or Town: BOXFORD State: MA Zip: 01921 Country: USA

**2b. Street address of the office in the Commonwealth at which the records will be maintained:**

No. and Street: 89 SPOFFORD RD
89 SPOFFORD RD
City or Town: BOXFORD State: MA Zip: 01921 Country: USA

**3. The general character of business, and if the limited liability company is organized to render professional service, the service to be rendered:**
ALTERNATIVE ENERGY MANAGEMENT IS AN INTEGRATED ENERGY CONSERVATION, POW ER QUALITY AND INDOOR AIR QUALITY SOLUTIONS COMPANY. OUR GOAL IS TO DELIVER INDUSTRY LEADING TECHNOLOGY PRODUCTS AND SERVICES THAT ADDRESS SEVERAL O F TODAY'S MOST PRESSING ENVIRONMENTAL CHALLENGES: MANAGING ENERGY CONSU MPTION, IMPROVING INDOOR AIR QUALITY, DEVELOPING AND MAINTAINING ENERGY SU STAINABILITY PROGRAMS.

**4. The latest date of dissolution, if specified:**

**5. Name and address of the Resident Agent:**
Name: BENJAMIN F PUGH
No. and Street: 89 SPOFFORD RD
City or Town: BOXFORD State: MA Zip: 01921 Country: USA

**I, BENJAMIN F PUGH resident agent of the above limited liability company, consent to my appointment as the resident agent of the above limited liability company pursuant to G. L. Chapter 156C Section 12.**

**6. The name and business address of each manager, if any:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| MANAGER | LOUISE MARCHEV-PUGH | 89 SPOFFORD RD<br>BOXFORD, MA 01921 USA |

**7. The name and business address of the person(s) in addition to the manager(s), authorized to execute documents to be filed with the Corporations Division, and at least one person shall be named if there are no**

MA SOC   Filing Number: 201733859600     Date: 4/22/2017 2:33:00 PM

THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

April 22, 2017 02:33 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

# Exhibit F

Control Number : 08056759

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF TERMINATION

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

**ALTERNATIVE ENERGY MANAGEMENT, LLC**
**a Domestic Limited Liability Company**

has been duly terminated on **04/25/2017** under the laws of the State of Georgia by the filing of documents in the office of the Secretary of State and by the paying of fees as required by the Official Code of Georgia Annotated and the Rules and Regulations promulgated there under. Attached hereto is a true and correct copy of said documents.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on 04/25/2017

Brian P. Kemp
Secretary of State

# Exhibit G

ALTERNATIVE ENERGY MANAGEMENT, LLC
*An Energy, Power & Air Quality Solutions Company*

HOME PRODUCTS & SERVICES CONTACT

# CONTACT

## Contact Us

If you're ready to start reducing your

Name *

energy usage, utility costs, and emissions
we're ready to get started.

**B. Frank Pugh**
bfpugh@acm-energy-solutions.com
Office - (978) 352 7245
Cell - (617) 515 0324
Fax - (978) 352 7292

**Louise Pugh**
lmpugh@acm-energy-solutions.com
Cell - (973) 380 2539

Monday – Friday: 9AM – 5PM

First Name                    Last Name

Email Address *

Subject *

Message *

HOME     PRODUCTS & SERVICES

CONTACT

# GREEN ENERGY SOLUTIONS

LEARN MORE



# We are equipped to help you conserve resources and costs.

Our mission is to provide comprehensive solutions that will drive your facilities to peak performance. By combining best practices we are able to conserve energy, natural resources, and reduce pollution, while adhering to Federal and State safety guidelines. Our approach improves our client's business environment, cost, and consumption creating a return on investment allowing our products and services to pay for themselves.



## PRODUCTS & SERVICES

We provide a variety of services beginning with an energy consulting, auditing, design, installation and maintenance, documentation, energy bill analysis, metering and monitoring plans to best suit your needs. Ready to take the next step?

Learn More →

"

Besides giving us a substantial energy and financial savings (approximately $52,000+ in 2016), these upgrades implemented State-of-the-Art LED lighting systems to the Town facilities while achieving many other benefits.

— John C. Dold - Town Engineer - Boxford, MA

# Ready Yet?

**WE'RE READY TO HELP YOU ACHIEVE YOUR ENERGY EFFICIENCY AND ENVIRONMENTAL GOALS.**

GET STARTED

INTEGRATIVE ENERGY MANAGEMENT, LLC
*An Energy, Power & Air Quality Solutions Company*

HOME PRODUCTS & SERVICES CONTACT

# PRODUCTS & SERVICES

## Product & Services Overview

We will work with you to optimize your energy efficiency achieving a **10%-50%** reduction on your current



utility costs. Realizing a return on investment in under **24-months** while reducing your carbon footprint.

Each of our products takes a piece of the energy puzzle and aims to make it as efficient as possible. Before we begin each project we'll conduct a comprehensive audit of your current systems and provide a design plan with potential upgrades.

[redacted]

## HEALTHY & ENERGY EFFICIENT LIGHTING SYSTEMS

Our LED solutions have an extensive rated life of up to 140,000 hours. They are low maintenance, energy efficient, create less heat output, and your older lighting systems are easily retrofitted allowing you to realize LED's impressive results.

Our Circadian® lighting systems promote healthy working environments, improve worker performance, reduce energy consumption, and maintenance costs. These are especially effective for facilities that require 24/7 lighting. Night shift employees' performance and overall health can be substantially improved with these cutting edge systems.

Our systems protect against lightning strikes, surges, and spikes, reduce electric noise, energy consumption, and costs. The bottom line is savings – In hard and soft dollars.

From protecting your sensitive equipment to managing power surges and inductive loads our power quality systems will save on equipment costs, prolong their lifespan, and allow your systems to run more efficiently reducing energy costs.

“

In addition to the energy cost savings which is dramatic, our environment has gone through a tremendous positive change. You have my appreciation and satisfaction for the lighting projects replacing and retrofitting on our cam

— Patrick Lambert - St. Thomas Aquinas College - Director, Facilities & Construction

Monitor and control every aspect of your lighting, energy consumption, temperature, humidity, and more.







## AUDITING, REBATES, AND LEED CERTIFICATION

Our audit process begins with a comprehensive evaluation with inspections, surveys, and analysis of your facilities current energy flows; appraising your energy use, energy quality, as well as what you pay for that energy.

That audit defines our customized plan to suit your needs. We identify not only what your energy usage will be after installing our systems but also how long before you can expect to see a return on your investment. We typically achieve between a 10% to 50% reduction in energy costs and a return on investment of less than 24-months.

The result of this process also allows us to maximize any entitled energy rebates and LEED certifications.

# Ready yet?

**WE'RE READY TO HELP YOU ACHIEVE YOUR ENERGY EFFICIENCY AND ENVIRONMENTAL GOALS.**

GET STARTED



**IN THE SUPERIOR COURT OF GWINNETT COUNTY**

**STATE OF GEORGIA**

STEPHEN SANFORD and
ALTERNATIVE ENERGY MANAGEMENT, LLC,
of Georgia d/b/a AEM, LLC.

Plaintiffs

v.

BENJAMIN FRANK PUGH and
ALTERNATIVE ENERGY MANAGEMENT, LLC,
of Massachusetts, d/b/a AEM, LLC.

Defendants.

) CAFN: 18 A 06045-1

**VERIFICATION FOR COMPLAINT**

Personally appeared before the undersigned officer duly appointed to administer oaths, STEPHEN SANFORD, who after first being sworn, deposes and states on oath that the facts set forth in the within and foregoing **COMPLAINT**, if any, are true and correct, to the best of the Affiant's knowledge, information and belief.

Plaintiff Date 6/27/18

SWORN to and subscribed before me this 27th day of June, 2018.

Notary Public

My Commission expires: 2.9.19

NANCY M. BOYNTON NOTARY PUBLIC MY COMMISSION EXPIRES FEBRUARY 9, 2019 COUNTY, GEORGIA

213
ch

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

Stephen Sanford and

Alternative Energy Management, LLC,

of Georgia, d/b/a AEM, LLC.

PLAINTIFF

CIVIL ACTION NUMBER: 18 A 06045-1

vs.

Benjamin Frank Pugh and

Alternative Energy Management, LLC,

of Massachusetts, d/b/a AEM, LLC.

DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT: Alternative Energy Management, LLC, of Massachusetts, d/b/a AEM, LLC.

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Scott T. Bushnell, Esq.
2 Ravinia Drive, Suite 1500
Atlanta, GA 30346

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 12 day of July, 2018.

Richard T. Alexander, Jr.,
Clerk of Superior Court

By [signature]
Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-I Rev. 2011

213
ch

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

Stephen Sanford and

Alternative Energy Management, LLC,

of Georgia, d/b/a AEM, LLC.

PLAINTIFF

vs.

CIVIL ACTION NUMBER: 18 A 06045-1

Benjamin Frank Pugh and

Alternative Energy Management, LLC,

of Massachusetts, d/b/a AEM, LLC.

DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT: Benjamin Frank Pugh

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Scott T. Bushnell, Esq.
2 Ravinia Drive, Suite 1500
Atlanta, GA 30346

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 12 day of July, 2018.

Richard T. Alexander, Jr.,
Clerk of Superior Court

By [signature]
Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-I Rev. 2011

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

Stephen Sanford and

Alternative Energy Management, LLC,

of Georgia, d/b/a AEM, LLC.

PLAINTIFF

CIVIL ACTION NUMBER: 18 A 06045-1

vs.

Benjamin Frank Pugh and

Alternative Energy Management, LLC,

of Massachusetts, d/b/a AEM, LLC.

DEFENDANT

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY GA
2018 AUG 15 AM 10:38
RICHARD ALEXANDER, CLERK

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT: Alternative Energy Management, LLC, of Massachusetts, d/b/a AEM, LLC.

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Scott T. Bushnell, Esq.
2 Ravinia Drive, Suite 1500
Atlanta, GA 30346

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 12 day of July, 2018.

Richard T. Alexander, Jr.,
Clerk of Superior Court

By [signature]
Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-I Rev. 2011



Essex County Sheriff's Department , PO BOX 2019, Salem, MA 01970
August 8, 2018

I hereby certify and return that on 8/1/2018 at 10:23 AM I served a true and attested copy of the summons, complaint, exhibits in this action in the following manner: To wit, by delivering in hand to BENJAMIN FRANK PUGH at 89 SPOFFORD Road Boxford, MA 01921 .

Gary Fidrych

Deputy Sheriff Gary Fidrych